## HAVERSTICK v BEAVER et

Common Pleas Court, Greene Co.

No. 22359. Decided Dec. 4, 1940.

Marcus Shoup, Xenia, for plaintiff.
Smith, McCallister & Gibney, Xenia, for defendants.

### OPINION

By JOHNSON, J.

The plaintiff in this case made a deed to the defendant, Charles I. Beaver, for a certain tract of land in Beavercreek township, and she now claims that the description in the deed is a mistake and that it was the intention of the plaintiff to sell and the intention of the defendant, Charles I. Beaver, to buy only that portion of the land belonging to the plaintiff which was north of the Dayton and Xenia Pike, and plaintiff asks that the deed be corrected to correspond to the intention of the parties.

The deed was drawn by the plaintiff's attorney, Marcus Shoup, and he testi-

fied on the witness stand that he made up the description contained in the option and in the deed, and that he believed at the time when he drew the deed that the description only called for that portion of the plaintiff's land which was north of the Dayton and Xenia Pike. A layman reading the description would not know that it crossed the Pike, because it does not specifically state in the description that it crosses the Pike, but when run by an engineer it is found that it does in reality cross and include a triangular tract south of the Pike.

The defendant, Mr. Beaver, testified on the witness stand that he thought that all of the land was north of the Pike, and that it was not his intention to buy any land south of the Pike, and he testified that this was clearly and generally understood by all the parties and that there was no mistake about that, but he claims that he was buying 78.46 acres of land and that because there are not that many acres of land north of the Pike that he is entitled to this 4.49 acres south of the Pike.

The deed itself in describing the property says that all of the land is north of the Dayton and Xenia Pike, and it is clear to the court from the testimony introduced in the case by both the plaintiff and the defendants that it was never the intention of Mr. Beaver to buy nor was it the intention of the plaintiff to sell any of her property to Mr. Beaver that was south of the Dayton and Xenia Turnpike and that it was a mistake on the part of the scrivener of the deed.

In addition to the above, Mr. Beaver had full knowledge that the tract north of the Dayton and Xenia Turnpike did not contain 78.46 acres, because on February 21, 1940, Mr. Warner, a licensed engineer employed by Mr. Beaver, made a survey of this land, and he and Mr. Beaver say that about a week or ten days after the survey Mr. Warner notified Mr. Beaver that the tract north of the Dayton and Xenia Turnpike only contained 73.56 acres of land. The deed was not delivered to Mr. Beaver until about the 30th of March,

at which time the money was paid by Mr. Beaver for the land. This was approximately a month after Mr. Beaver had full knowledge that the tract of land north of the Dayton and Xenia Turnpike contained only 73.56 acres. Yet in view of the fact that he had full knowledge that it only contained 73.56 acres he went ahead with the transaction never notifying the plaintiff or her agent, Harry Haverstick, that he had discovered that there was less than 78.46 acres north of the Dayton and Xenia Turnpike.

The courts have repeatedly held that unless you buy land at a certain sum per acre the quantity expressed in the deed does not govern and that it may be and often is a mere estimate of the number of acres contained therein.

In view of the above, the court is of the opinion that the plaintiff is entitled to have the deed corrected so as not to include the tract of 4.46 acres of land south of the Dayton and Xenia Turnpike.

C. W. Murphy and his wife loaned to Mr. Beaver a certain sum of money secured by a mortgage on the whole of the property. They had a right to assume that the deed was correct, and, therefore, it would not be equitable to deprive them of the security which they hold against the entire tract, and so the court is not going to order the mortgage released as against the 4.46 acres but hold it as a lien against the said 4.46 acres until the mortgage by Mr. Beaver to the Murphys has been paid. This, of course, is to be in the usual ordinary way in which it is provided that it should be paid in the contract. In other words, the 4.46 acres is only held as a secondary security for the payment of the mortgage, securing the loan to Mr. Beaver from Mr. Murphy, and all of the other property in the mortgage is to be exhausted, if necessary, before the lien could be foreclosed against the 4.46 acres.